UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AREE SPIVEY

     Petitioner,

v.                                             Case No. 8:08-cv-2235-T-23EAJ

SECRETARY, Department of Corrections,

     Respondent.

_____/

## ORDER

     Spivey petitions under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his conviction of perjury by contradictory statements in a capital offense proceeding, for which Spivey serves twenty years in prison.  Numerous exhibits ("Respondent's Exhibit __") support the response.  (Doc. 14)  Although no challenge to the petition's timeliness is offered, respondent correctly argues that all five grounds in the petition lack merit.

## FACTS[1]

     In 2003 Spivey and Jason Reid (his cousin) were arrested and charged with first-degree murder.  Reid's murder trial occurred in 2004.  Called as a defense

_____

[1] This summary of the facts derives from Spivey's initial brief on direct appeal and his Section 2254 petition.  (Respondent's Exhibit 3 and Doc. 1)

witness at Reid's trial, Spivey testified that he did not see anyone with a gun during the altercation that caused the death of the victim, Eric Anderson.  Despite Spivey's testimony, the jury found Reid guilty of first-degree murder.  A couple of months later Spivey was tried for the same murder.  Spivey testified that he saw both Reid and Anderson possess guns and that Reid shot Anderson.  During his own trial, Spivey admitted that he knew he was lying under oath when he testified at Reid's trial.  The jury acquitted Spivey of first-degree murder.  Spivey was subsequently charged and found guilty of perjury by contradictory statements.  Spivey was sentenced to twenty years in prison as a habitual felony offender.[2]  Spivey asserted nine grounds for relief in a timely Rule 3.850 motion, which was denied and affirmed on appeal.  (Respondent's Exhibit 11 and 14)  Spivey asserts five of those nine grounds in his habeas petition.[3]

## **STANDARD OF REVIEW**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly

---

[2] Spivey was sentenced as a habitual felony offender because his perjury conviction violated the probation he was serving before his arrest for first-degree murder.

[3] To facilitate an easier understanding of each ground, Spivey's grounds are addressed in the order of one, four, three, two, and five.

deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. at 694. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786-87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Federal courts must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, ____ U.S. ____, 130 S. Ct. 1855, 1866 (2010). *See also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly

deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court affirmed Spivey's convictions and sentence on direct appeal.  (Respondent's Exhibit 6)  Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Spivey's subsequent Rule 3.850 motion to vacate.  (Respondent's Exhibit 14)  The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to

> the record in existence at that same time, i.e., the record before the
> state court.

*Pinholster*, 131 S. Ct. at 1398.  Spivey bears the burden of overcoming a state court

factual determination by clear and convincing evidence.  "[A] determination of a

factual issue made by a State court shall be presumed to be correct.  The applicant

shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness

applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v.*

*Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).  The state

court's rejection of Spivey's post-conviction claims warrants deference in this case.

(Order Denying Motion for Post-Conviction Relief, Respondent's Exhibits 11)

## INEFFECTIVE ASSISTANCE OF COUNSEL

Spivey claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d

1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th

Cir. 1994)).  *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective

assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well
> settled and well documented.  In *Strickland v. Washington*, 466 U.S.
> 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set
> forth a two-part test for analyzing ineffective assistance of counsel
> claims.  According to *Strickland*, first, the defendant must show that

> counsel's performance was deficient.  This requires showing that
> counsel made errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's errors
> were so serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent

prejudice.  *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When

applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two

grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional

judgment."  *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness

claim must judge the reasonableness of counsel's challenged conduct on the facts of

the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.

*Strickland* requires that "in light of all the circumstances, the identified acts or

omissions were outside the wide range of professionally competent assistance."  466

U.S. at 690.

Spivey must demonstrate that counsel's error prejudiced the defense because

"[a]n error by counsel, even if professionally unreasonable, does not warrant setting

aside the judgment of a criminal proceeding if the error had no effect on the

judgment." 466 U.S. at 691-92.  To meet this burden, Spivey must show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of

law and facts relevant to plausible options are virtually unchallengeable; and strategic

choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on

investigation." 466 U.S. at 690-91.  Spivey cannot meet his burden merely by

showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have
> done. Nor is the test even what most good lawyers would have done.
> We ask only whether some reasonable lawyer at the trial could have
> acted, in the circumstances, as defense counsel acted at trial . . . . We
> are not interested in grading lawyers' performances; we are interested
> in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v. United

States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers,

in every case, could have done something more or something different.  So,

omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent

or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting

Burger v. Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751

(1983) (counsel has no duty to raise a frivolous claim).

Spivey must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  In determining "reasonableness," a federal petition for the writ of habeas corpus permits an independent assessment of "whether the state habeas court was objectively reasonable in its *Strickland* inquiry" but not an independent assessment of whether counsel's actions were reasonable.  *Putnam v. Head*, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 131 S. Ct. at 788.  *See also Pinholster*, 131 S. Ct. at 1410 (A petitioner must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In summarily denying Spivey's motion for post-conviction relief, the state court specifically recognized that *Strickland* governs a claim of ineffective assistance

of counsel.  (Respondent's Exhibit 11 at 2)  Because the state court rejected the

claims based on *Strickland*, Spivey cannot meet the "contrary to" test in Section

2254(d)(1).  Spivey instead must show that the state court unreasonably applied

*Strickland* or unreasonably determined the facts.  In determining "reasonableness," a

federal petition for the writ of habeas corpus authorizes determining only "whether

the state habeas court was objectively reasonable in its *Strickland* inquiry," not an

independent assessment of whether counsel's actions were reasonable.  *Putnam v.*

*Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).

The presumption of correctness and the highly deferential standard of review require

that the analysis of each claim begin with the state court's analysis.

Ground One:

Spivey alleges that counsel was ineffective for not moving to dismiss the

charging information.  Spivey asserts that the information contained a vague and

indistinct charge that failed to apprise the defense of the precise statements of perjury.

(Doc. 1-2 at 6)  The post-conviction court reasonably held that no deficient

performance occurred because the proposed motion to dismiss was meritless under

state law.  (Respondent's Exhibit 11 at 2-3) (citations to the record omitted):

> In the Defendant's first claim, the Defendant contends that trial
> counsel provided ineffective assistance of counsel by failing to file a
> motion to dismiss the information.  A motion to dismiss information
> will be granted only if the "information is so vague, indistinct, and
> indefinite as to mislead the accused and embarrass him or her in the
> preparation of a defense or expose the accused after conviction or
> acquittal to substantial danger of a new prosecution for the same

- 10 -

offense." Fla. R. Crim. P. 3.140(o).  Further, "an information is sufficient if it follows the language of the statute, and need no[t] set forth proof with which the state intends to establish its case." *Martinez v. State*, 368 So. 2d 338 (Fla. 1978).  In the present case, the information follows the language of the statute and clearly demonstrates that the Defendant is charged with perjury that occurred during official proceedings that relate to a capital felony, between July 6, 2004, and September 16, 2004.  Therefore, the Defendant was given sufficient information on the nature of the charges and this information did not mislead or embarrass him during the preparation of a defense.  Accordingly, if trial counsel had filed a motion to dismiss, the court would have denied the motion.  As trial counsel cannot be found ineffective for [not] raising meritless motions and claims, *Pace v. State*, 854 So. 2d 157, 182 (Fla. 2003), the Defendant's first claim is DENIED.

"Federal courts may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Although ineffectiveness of counsel is a federal question, a federal court defers to the state court's decision whether counsel should have raised a state law issue.  *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  Spivey's post-conviction court held that an objection to the information as vague or indistinct was meritless.  A federal court should not question that determination.  *See Herring v. Secretary, Dep't. of Corr.*, 397 F.3d 1338 (11th Cir. 2005) ("It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.").

The post-conviction court's ruling applied *Martinez v. State*, 368 So. 2d 338, 340 (Fla. 1978), which holds that the charging information "is sufficient if it follows the language of the statute, and the state need not present proof with which it intends to establish its case."  Spivey agreed that the information follows the applicable

statute but asserted that the information was defective because it failed to assert the exact statements on which the charge was based.  (Doc. 1 at 6)  However, a charging information is defective only if the "information is so vague, indistinct, and indefinite as to mislead the accused."  Rule 3.140(o), Fla. R. Crim. P.  The post-conviction court objectively reasoned that the information was not misleading because the information clearly "charged [Spivey] with perjury that occurred during official proceedings that relate to a capital felony, between July 6, 2004, and September 16, 2004."  (Respondent's Exhibit 11 at 3)  The post-conviction court's ruling – that the prosecution's charging information was not required to include more than what was asserted (Respondent's Exhibit 11 at 3) – properly followed *Martinez's* conclusion that the charging information "need not present proof with which it intends to establish the case."  368 So. 2d at 340.  Federal courts "are not prepared to require counsel to raise an argument that has already been decided adversely to his client's position by the state's highest court . . . ."  *Magwood v. Culliver*, 555 F.3d 968, 978 (11th Cir. 2009).

The post-conviction court properly applied state precedent that counsel is not deficient for not raising a meritless state law claim.  The post-conviction court's decision is consistent with *Strickland*.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Further, Spivey was not prejudiced by defense counsel's failure to assert a losing

objection.  *See Callahan*, 427 F.3d at 932.  Because Spivey's claim fails to satisfy both components of *Strickland*, ground one lacks merit.

<u>Grounds Three and Four</u>:

Spivey's claims in grounds three and four are based on counsel's alleged misunderstanding of materiality in the perjury context.  In ground three Spivey alleges that his counsel was ineffective for not objecting to the trial court's allegedly erroneous investigation into the materiality of Spivey's sworn statements.  In ground four Spivey alleges that counsel was ineffective for arguing the issue of materiality to the jury because state law clearly reserves a materiality determination for the trial judge.  Ground four is addressed first to facilitate an easier understanding of the grounds.

In ground four Spivey correctly asserts that the trial court must determine the materiality of the statements in a perjury trial.  (Doc. 1-2 at 15)  "Whether a matter is material in a given factual situation is a question of law."  § 837.011(3), Fla. Stat. (2004).  Materiality is not an element of perjury but rather a question of law that a court determines before trial.  *State v. Ellis*, 723 So. 2d 187, 189 (Fla. 1994). However, a petitioner must prove both deficient performance and prejudice to show ineffective assistance and a court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one."  *Strickland*, 466 U.S. at 697. The post-conviction court reasonably found that, based on the substantial

incriminating evidence, Spivey proves no prejudice because he fails to show a reasonable probability of a different outcome.  (Respondent's Exhibit 11 at 4)

At the perjury trial the prosecution presented the court reporter from Reid's trial to read Spivey's pertinent sworn testimony.  The court reporter testified as follows (Respondent's Exhibit 1 vol. 2 at 138-41):

> Q:  I want to direct your attention now to just one short portion of that transcript, and I'd like you to read it out loud so the jury can hear.
>
> Number one, at the very first of your transcript on page number three.  There you sort of attest that the defendant Aree Spivey was placed under oath?
>
> A:  Right.
>
> Q:  And did that happen in your presence?
>
> A:  Yes.
>
> Q:  And is that accurate what you have on your transcript there he was placed under oath on July 12th of '04?
>
> A:  Yes
>
> . . . .
>
> Q:  Okay.  If you would just pick up on line two and you go all the way down to line 24.
>
> A:  Okay.  Question, "Did you see Jason Reed or Pat Brown shoot at anybody?"  Answer, "No, sir."  Question, "Did you see any of those people that I just named, yourself, Pat Brown or Jason with a gun that night?"  Answer, "No, sir."  Question, "Do you know who did have guns?"  Answer, "No, sir."  Question, "Do you know how many guns were fired?"  Answer, "No, sir."  Question, "Were there a lot of shots?"  Answer, "I think so."  Question, "You think so?  Were you pretty shook up?"  Answer, "Yes, sir."  Question, "Pretty scared[?]"  Answer, "Yes, sir."  Question, "Kind of hard to remember what happened because you were scared?"

Answer, "No, sir." Question, "You do remember?" Answer, "Yes, sir."

Q: Okay. And as you look at that exhibit in front of you that you've just given us a short excerpt from, that is your work product, and you believe that to be true and accurate, correct?

A: Yes.

The prosecution presented the court reporter for Spivey's trial to read Spivey's sworn statements from the second murder trial. The court reporter testified as follows (Respondent's Exhibit 1 vol. 2-3 at 148-54):

Q: You said previously this was September 14th of '04?

A: Yes, sir.

Q: And was Mr. Spivey placed under oath?

A: Yes, sir.

Q: Did that occur in your presence?

A: Yes, sir.

Q: And you so note that in your transcript?

A: Yes, sir.

Q: Okay. I would like you now -- and you don't need to mark that I'd like you now to go to page 41.

A: Yes, sir.

Q: Line 21 through the bottom of the page.

A: Yes, sir.

Q: And now, who is questioning here, do you know?

A: I believe this is direct examination by defense attorney Howardene Garrett.

Q: Yes, ma'am, it is.

A: Okay.  That's Ms. Garrett.  She is a defense attorney.

Q: So if you would pick up with that question on line 21.

A: 21, question, "What happened then when Eric started firing the gun?"  Answer, "When he started -- like when he started to fire, he went to approaching Jason, that's when Jason shot him."

Q: I'd like you to go to page 54.  And if you could start with line number eight to the bottom of the page.

A: Yes, sir.

Q: And is this -- this is also his own defense counsel Ms. Garrett questioning him?

A: Yes, sir.

Q: Okay.  I'm sorry.

A: Question by Ms. Garrett on line eight, "Now the time that you testified before in a different fashion did you realize what you were doing was wrong or even a crime?"  Answer, "I realized that" – and there was an objection by Mr. Antonello, the State Attorney, the court responded, and Mr. Spivey continued to answer, "I knew it was wrong, but at this time, you know, I felt like it had to be done."

. . . .

Q: Thank you on that page.  And one last section.  We go to page 58.  Now I believe this is different counsel asking this question.  You can so indicate.

A: Mr. Antonello on cross-examination.  On page 58, what line, sir?

Q: Line four.

A: Question, "And are you telling us now that you lied under oath?"  Answer, "Yes, sir."  Question, "Are you telling us that you lied when you testified for Jason [Reid]?"  Answer, "Yes, sir."  Question, "Are you telling us[,] and that was the day you gave that

sworn testimony was July 12th . . . ."  Answer, "Yes, sir."
Question . . . "And then did you lie when I took your deposition
also July 7th, 2004, five days before?"  Answer, "Yes, sir."
Question, "Today is the first time we heard you ever saying
anybody had a gun, right?"  Answer, "Yes, sir."  Question, "Your
story has always been that you never saw any of those other guys
with a gun, right?"  Answer, "Yes, sir."  Question, "And you never
said anything when you were under oath twice before about Eric
Anderson shooting a gun, right?"  Answer, "No, sir."  Question, "I
mean, that is correct, right?"  Answer, "Yes, that's correct."
Question, "And you never said anything before, and when you
were under oath when you testified for Jason about Jason having a
gun, right?"  Answer, "That's correct."

. . . .

A:  Question -- I'm on line seven "And you even went into a story
that said if he would have had a gun when he came back to the
car I would have seen he had a gun because he couldn't have
hid it in the car, you even made up all that?"  Answer, "Yes, sir."
Question, "And before you gave that testimony you were put under
oath?"  Answer, "Yes, sir."  Question, "[A]nd you solemnly swore
that you would tell the truth, the whole truth, and nothing but the
truth, didn't you?"  Answer, "Yes, sir."

Spivey's assertion that the allegedly erroneous defense strategy was the "but for"

cause of the perjury conviction has little support given Spivey's open admission to

knowingly lying under oath.

Spivey alleges that counsel prejudiced the defense by revealing the murder trial

verdicts to the jury while arguing the materiality issue.  (Doc. 1-2 at 16)  However,

"[a]n error by counsel, even if professionally unreasonable, does not warrant setting

aside the judgment of a criminal proceeding if the error had no effect on the

judgment."  *Strickland*, 466 U.S. at 691-92.  Spivey's conclusory allegation that

counsel's strategy "prejudiced the minds of the jury" (Doc. 1-2 at 16) creates no

probability sufficient to "undermine the confidence in the trial outcome." *Strickland*, 466 U.S. at 694.   Counsel's alleged error had no effect on the judgment because the prosecution was able to prove all the elements of the charge by simply asking the court reporters to read pertinent portions of the transcripts.  See § 837.021, Fla. Stat. (2004).  The prosecution presented direct evidence that (1) Spivey testified under oath at both trials, (2) his testimony from his trial directly contradicted his testimony from Reid's trial, (3) he admitted to knowingly and willfully providing untrue testimony, (4) he admitted to knowing that he was under oath when he offered his untrue testimony, and (5) both trials were capital offense proceedings.  (See Respondent's Exhibit 1 vol. 2-3 at 138-54)  Spivey's argument is ineffective because he asserts nothing to refute his open admission to knowingly providing untrue and contradictory statements during official proceedings for the capital offense of first-degree murder.

Spivey proves no prejudice because he fails to show that counsel overlooked a valid defense strategy, one that would have caused a different outcome.  *Strickland*, 466 U.S. at 694.  Analysis of deficient performance is not necessary because Spivey proves no prejudice.  *Sims*, 155 F.3d at 1305.  Consequently, ground four lacks merit.

Spivey's claim in ground three was also summarily denied by the post-conviction court, which reasonably applied *Strickland* by holding that, because Spivey's proposed objection has no legal basis under state law, counsel was not

ineffective.  (Respondent's Exhibit 11 at 3-4)  In Florida, "materiality" is a threshold issue designated for the trial court to determine before trial.  *Ellis*, 723 So. 2d at 189. Therefore, Spivey's counsel had no basis to object to the trial court's authority to research state case law to determine materiality of statements.

Spivey also alleges that the trial court would have excluded certain prejudicial statements had his counsel objected to the materiality of those statements.  (Doc. 1-2 at 13)  During Spivey's testimony he was questioned about a pistol-whipping that allegedly occurred during the altercation that caused the murder.  (Doc. 1-2 at 12) Spivey contends that the testimony about the pistol-whipping was immaterial and prejudicial.[4]  Case law concerning materiality contradicts Spivey's allegation.  In the perjury context, a material statement is a statement germane to the inquiry and bearing on the determination of the underlying case.  *State v. Diaz*, 785 So. 2d 744, 746 (Fla. 3d DCA 2001).  Spivey argues that his perjury charge was based on his sworn statements regarding the murder of Eric Anderson, not an alleged pistol-whipping.  (Doc. 1-2 at 12)  However, the underlying determination during the perjury trial was whether Spivey offered contradictory statements about seeing or hearing someone in the altercation use a pistol.  (Respondent's Exhibit 1 vol. 2

---

[4] The claim based on counsel's not objecting to the pistol-whipping as an allegedly immaterial statement is unexhausted and is procedurally defaulted.  Spivey's 3.850 motion challenges the trial court's general investigation into materiality but Spivey never challenged allegedly prejudicial statements about a pistol-whipping.  (Respondent's Exhibit 10 at 5D pg. 1-3) Spivey procedurally defaulted this portion of his claim because he failed to present the specific claim to the state court.  *Picard*, 404 U.S. at 275.  Even if he could overcome procedural default, Spivey is entitled to no relief because the claim lacks merit.

126-27) Spivey's testimony about himself or Reid striking someone with a pistol was clearly germane to the inquiry of whether Spivey lied about seeing a pistol. Counsel had no basis for an objection to the materiality of those statements. The failure to raise a meritless claim is not deficient performance. *See Barnes*, 463 U.S. at 751 (1983).

Spivey shows no reasonable probability of a different outcome even if Spivey's counsel had raised the objection and the statements were excluded. Spivey provides nothing to show that the allegedly immaterial statements influenced the jury. The prosecution's case never focused on statements about a pistol-whipping. Instead, the prosecution's entire case centered on Spivey's testimony that he lied to the court about seeing Reid use a gun to shoot and kill Anderson. (Respondent's Exhibit 1 vol. 3 at 232) The examinations of the two court reporters addressed the limited excerpts of Spivey's contradictory statements and no questions about a pistol-whipping were included in the excerpts. (See Respondent's Exhibit 1 vol. 2 at 140-41 and vol. 3 152-54) The prosecution asked the witnesses to tab each excerpt to specifically identify the contradictory statements because "otherwise, there's [hundreds] of pages to breeze through." (Respondent's Exhibit 1 vol. 2 at 142) The prosecution directed the jury to focus strictly on the contradictory statements and Spivey's admission of knowingly offering false statements under oath. (Respondent's Exhibit 1 vol. 2 at 126-27) Lastly, the prosecution's closing argument mentioned no incident of either a pistol-whipping or other violent act by Spivey. (Respondent's Exhibit 1 vol. 3 at 228-

35)  Spivey's proposed objection shows no reasonable probability of a different

outcome under *Strickland* because the prosecution presented substantial material

evidence of guilt even with the exclusion of the allegedly immaterial evidence.

Consequently, Spivey's claim fails to satisfy either component of *Strickland* and

ground three lacks merit.

Ground Two:

Spivey asserts that counsel was ineffective for not objecting to the trial court's

alleged error of omitting elements two and three of the perjury charge from the jury

instructions.  Section 837.021, Florida Statutes, describes the jury instruction for

elements two and three of perjury by contradictory statements:

> 2.  In (describe the official proceeding in which one of the statements
>     was made), (defendant) made the statement (read from charge).
>
> 3.  In (describe the official proceeding in which the other statement
>     was made), (defendant) made the statement (read from charge).

Ground two is more specifically defined in Spivey's 3.850 motion, where he asserted

that the trial court's not reading the specific contradictory statements "removed . . .

specific 'material' statements essential for the jury's determination."  (Respondent's

Exhibit 10 at 5(b) pg. 3)  In Spivey's case, the trial court's instruction on elements

two and three quoted the statutory jury instruction and directed the jury to the

statements already entered into evidence.  (Respondent's Exhibit 1 vol. 2 at 236-37):

> Second [element], that in the trial of the State versus Jason [Reid] on
> July 12th, 2004, the defendant made the statement or statements

contained in the transcript of the trial, which is one of the exhibits in evidence.

The third element is, that in the trial of State versus Aree Spivey on September 14th of 2004, the defendant made the statement or statements contained in the transcript of that trial that has also been introduced into evidence.

*See also Downs v. State*, 740 So. 2d 506, 518 (Fla. 1999) (holding that trial counsel's not objecting to a standard jury instruction is not deficient performance if the state's highest court has not invalidated the instruction).  The post-conviction court reasonably determined that the statements pertinent to elements two and three were specifically identified within the exhibits submitted to the jury.  (Respondent's Exhibit 11 at 3) (citations to the record omitted):

The Court finds that the entire transcript of Defendant's testimony in both trials was admitted into evidence after the State called as witnesses the two court reporters who transcribed the two trials.  On the stand, the State asked the court reporters [to] read certain portions of the transcript into the record.  On cross-examination, trial counsel was able to have the court reporters read additional sections of the trial testimony into the record.  After reading each portion, the witnesses were directed to tab the testimony with a colored tab to designate whether it was part of the State's case or the Defendant's cross-examination.  At the conclusion of testimony, the transcripts were entered into evidence and subsequently permitted to be in the jury room during deliberations.  Therefore, a subsequent reading of the transcripts while instructing the jury was not required.  Accordingly, any objection to the court's reading of the jury instruction on perjury would have been denied.  As trial counsel cannot be found ineffective for failing to raise meritless claims, *Pace v. State,* 854 So. 2d 157, 182 (Fla. 2003), the Defendant's second claim is DENIED.

The record refutes Spivey's assertion that the jury was not informed of the statements that formed the factual basis for the perjury charge.  The trial court

- 22 -

instructed the jury to find elements two and three by reviewing the statements that were recited by the witnesses and entered into evidence.  By tabbing each of Spivey's contradictory statements from each murder trial, the prosecution specifically directed the jury to the factual basis for the elements.  (Respondent's Exhibit 1 vol. 2 at 147)  The tabbed transcripts were entered as exhibits and delivered to the jury to aid their deliberation.  (Respondent's Exhibit 1 vol. 2 at 141 and vol. 3 at 154)  Therefore, the post-conviction court reasonably found that a verbatim reading of the tabbed statements by the trial court was unnecessary.  (Respondent's Exhibit 11 at 3)  Spivey shows no prejudicial error by the trial court because he fails to show how the trial court's directing the jury to the explicitly tabbed statements inadequately conveyed the factual basis of elements two and three.

The post-conviction court reasonably held that the proposed objection to the jury instructions lacked merit (Respondent's Exhibit 11 at 3) and that counsel's failure to raise a meritless objection is not deficient performance.  *See Barnes*, 463 U.S. at 751.  Spivey was not prejudiced by defense counsel's failure to assert a losing objection.  *See Callahan*, 427 F.3d at 932.  Because Spivey fails to satisfy either component of *Strickland*, ground two lacks merit.

Ground Five:

Spivey alleges that counsel was ineffective for inadequately arguing a motion for judgment of acquittal.  The post-conviction court applied Florida precedent and

- 23 -

found that, based on the prosecution's evidence, the trial court would have denied a defense motion for a judgment of acquittal.  (Respondent's Exhibit 11 at 5)  The post-conviction court's denial was consistent with *Strickland* because not asserting a meritless claim under state law is not deficient performance.  *See Barnes*, 463 U.S. at 751.  Although ineffectiveness of counsel asserts a federal question, a federal court defers to the state court's decision on whether counsel should have raised a state law issue.  *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

Under Florida law, a motion for judgment of acquittal challenges "the legal sufficiency of the evidence to support every element of the charged offense." *Anderson v. State*, 504 So. 2d 1270, 1271 (Fla. 1st DCA 1986).  The trial court must review the prosecution's evidence in a light most favorable to the state in determining whether "the jury could infer guilt to the exclusion of all other inferences."  *State v. Law*, 559 So. 2d 187, 189 (1989).  The prosecution is not required to conclusively rebut every possible variation of events inferred from the evidence.  *Law*, 599 So. 2d at 189.  The prosecution needs to offer only legally sufficient evidence of guilt that is inconsistent with the defense's theory.  599 So. 2d at 189.  As discussed in ground four above, the post-conviction court's ruling that the prosecution's evidence clearly met each element of the perjury charge was not unreasonable.  (Respondent's Exhibit 11 at 5)  Therefore, the post-conviction court reasonably applied *Strickland* in holding that Spivey's counsel was not deficient for not raising a meritless claim.

- 24 -

Spivey also contends that counsel's motion for judgment of acquittal should have raised the "literal truth argument."[5]  Spivey alleges that the questions asked during the murder trials were ambiguous and that his testimony was not specific enough for a perjury conviction.  (Doc. 1-2 at 20)  This allegation is directly refuted by the record.  (See Respondent's Exhibit 1 vol. 2-3 at 138-54)  During Spivey's murder trial the prosecution's cross-examination of Spivey unambiguously questioned Spivey about whether he lied when he testified to Reid's possessing and firing a gun.  Further, Spivey specifically admitted that during the first murder trial he knowingly lied about Reid's using a gun to shoot Anderson.  (See Respondent's Exhibit 1 vol. 3 at 153-54)  Spivey also alleges that the prosecution failed to prove that Spivey lied about whether he or a person named "Pat Brown" possessed a gun.  (Doc. 1-2 at 20)  However, the prosecution's case for perjury was based specifically on Spivey's contradictory statements concerning Reid.  (Respondent's Exhibit 1 vol. 1 at 126-27)  Proving that Spivey lied about possession of a gun by someone other than Reid was irrelevant to the perjury determination in Spivey's case.

Because the prosecution's evidence supported every element of the perjury charge, counsel's not raising the "literal truth argument" during the judgment of acquittal motion creates no reasonable probability of a different outcome.  *Strickland*

_____

[5] Spivey's claim based on counsel's not raising the "literal truth argument" is unexhausted and procedurally defaulted because Spivey's Rule 3.850 motion asserted no claim on that basis. (Respondent's Exhibit 10 at 5H pg. 1-3)  Even if he can overcome procedural default, Spivey is not entitled to relief because the claim lacks merit.

466 U.S. at 694.  Analysis of deficient performance is not necessary because Spivey

proves no prejudice.  *Sims*, 155 F.3d at 1305.  Consequently, ground five lacks merit.

Accordingly, Spivey's petition for the writ of habeas corpus (Doc. 1) is

**DENIED**.  The clerk shall enter a judgment against Spivey and close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS

Spivey is not entitled to a certificate of appealability.  A prisoner seeking a writ

of habeas corpus has no absolute entitlement to appeal a district court's denial of his

petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate

of appealability ("COA").  Section 2253(c)(2) limits the issuing of a COA "only if the

applicant has made a substantial showing of the denial of a constitutional right."  To

merit a certificate of appealability, Spivey must show that reasonable jurists would

find debatable both (1) the merits of the underlying claims and (2) the procedural

issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473,

478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because Spivey fails

to show that reasonable jurists would debate either the merits of the claims or the

procedural issues, Spivey cannot meet *Slack*'s prejudice requirement.  529 U.S. at

484.  Finally, Spivey is not entitled to appeal *in forma pauperis* because he is not

entitled to a certificate of appealability.

Accordingly, a certificate of appealability is **DENIED**.  Leave to proceed *in forma pauperis* on appeal is **DENIED**.  Spivey must pay the full $455 appellate filing fee without installments unless the Circuit Court allows Spivey to proceed *in forma pauperis*.

ORDERED in Tampa, Florida, on August 7, 2012.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE